

Decided May 28, 1985

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

| | |
|---|---|
| JAMES S. SIROK, ) | CIVIL ACTION NO. 84-404 |
| Plaintiff, ) | |
| vs. ) | ORDER DISMISSING ACTION |
| ROTEC ENGINEERING, INC., ) | |
| Defendant. ) | |

The plaintiff is a resident of the Commonwealth. The defendant is a Texas corporation headquartered in Texas. The voluminous material filed herein reflects the following facts.

The plaintiff purchased a magazine in the Commonwealth which advertised an ultralight airplane for sale by the defendant. Becoming interested in the aircraft, the plaintiff paid a visit to the Texas factory. Upon his return to the Commonwealth, the plaintiff entered into correspondence with the defendant which, in January and February, 1983 culminated in a purchase agreement which the plaintiff signed in the

180

Commonwealth and sent back to Texas where it was accepted. The aircraft arrived on Saipan in March of 1983. During April to August, 1983, the plaintiff ordered, paid for and received parts for the aircraft from the defendant by U.S. mail.

In September of the same year, plaintiff ordered additional parts from the defendant which were to be sent by mail but rather than sending the parts by U.S. mail, the defendant sent them by air freight, resulting in a shipping cost of over $700. Plaintiff alleges that defendant acknowledged its error in shipping the parts by air freight and the defendant promised to remit to plaintiff the excess shipping cost.[1] It is further asserted that the defendant not only failed to pay the shipping costs, but it has also refused to pay back to plaintiff the cost of the parts.[2] These allegations are the gravamen of Count I of the complaint.[3]

---

[1] For the purposes of this motion, all the well pleaded facts by the plaintiff are accepted as true. The attachments to plaintiff's Opposition to the Motion to Dismiss do appear to substantiate the allegations. (See, for example, "Exhibit 20" attached to plaintiff's complaint).

[2] Plaintiff refused to pay for the shipping costs and therefore never obtained possession of the parts.

[3] It is noted that plaintiff does not pray for contract damages but for tort damages of $1,000,000 for emotional distress arising out of defendant's acts.

Count II of the complaint alleges that the plaintiff was a dealer for the defendant and as a result of the actions of the defendant, plaintiff was unable to profit from the dealership.

The dealership is formulated by correspondence between the plaintiff and defendant. It appears that one way the defendant expands its business is to recruit satisfied customers and name them dealers. The initial discussion about the plaintiff becoming a dealer was in March of 1982 (Exhibit 2) and was followed by correspondence (Exhibits 4a, 4b, 4c). By June of 1983, plaintiff and defendant considered plaintiff to be a dealer for the defendant (Exhibit 11, page 3 and Exhibit 24). Yet from plaintiff's affidavit it is clear the plaintiff has sold none of defendant's planes by virtue of his dealership.

The defendant filed a timely motion to dismiss along with a plea of abatement, motion to transfer and to consolidate.[4]

---

[4] The plea of abatement, motion to transfer and to consolidate are related to another action brought by plaintiff against defendant in the District Court for the Northern Mariana Islands, Civil Action No. 84-0003. That case has now been disposed of. The District Court transferred the action to the District Court in Texas. This court has no authority to consolidate this case with a federal case nor can it transfer this case to any other federal court pursuant to 28 USC §1404(a) as defendant requests. Thus, the only motion the court addresses herein is the motion to dismiss on jurisdictional grounds.

Defendant's motion to dismiss is directed to the proposition that this court does not have _in personam_ jurisdiction over the defendant.

To resolve the motion, a determination must be made whether defendant, as a foreign corporation, was transacting business within the Commonwealth. This determination is made by considering 7 CMC § 1102, the so-called "long arm statute" and the facts of this particular case. 36 AmJur 2d, <u>Foreign Corporations</u>, § 316.

7 CMC § 1102 states that a foreign corporation submits itself to the jurisdiction of this court if it does certain acts in the Commonwealth. These acts include transacting business (7 CMC 1102(a)(1)) contracting to supply goods or services within the Commonwealth (7 CMC 1102(a)(2)), or causing tortuous injury within the Commonwealth (7 CMC 1102(a)(4)and (5).

Though § 1102 is broad in scope, it must be read with constitutional due process requirements in mind. <u>Davis v Farmers Co-op Equity Co.</u>, 262 U.S. 312, 43 S.Ct. 556; <u>Interstate Amusement Co. v Albert</u>, 239 U.S. 560, 36 S.Ct. 168; <u>International Harvester Co. v Kentucky</u>, 234 U.S. 589, 34 S.Ct. 947, 36 AmJur 2d, <u>Foreign Corporations</u>, § 313.

Prior to 1945, the Supreme Court of the United States used a "doing business", "presence" or "consent" theory as the

standard for measuring the extent of a state's judicial power over foreign corporations. In International Shoe Company v Washington, 326 U.S. 310, 66 S.Ct. 154 (1945), the Court liberalized the standard to be used so that states could obtain in personam jurisdiction over foreign corporations. A two pronged test was enunciated which prescribed some minimum contact by the foreign corporation with the state which results from an affirmative act on the part of the defendant and a declaration that it must be fair and reasonable to require the defendant to come into the jurisdiction and defend the action. International Shoe delineated the outer due process limits for states though the latter could still use the previous "contact" or "presence" standard, or a modified version thereof.

This case presents, for the first time, the issue of whether 7 CMC § 1102 should be read in light of International Shoe or the older and more restrictive "contact" or "presence" standard.

The trend in the United States is to use the more liberal standard of International Shoe though each state court is free to choose for itself the standards to be applied under the circumstances under which a foreign corporation will be amendable to suit, assuming that minimum due process requirements are met. 36 AmJur 2d, Foreign Corporations, § 472; 12 ALR 2d

184

1440, § 1; 24 ALR 2d 1203, § 2; 44 ALR 2d 421, § 2a; 49 ALR 2d 668, § 1(a).

This court interprets the legislative intent behind 7 CMC § 1102 to impose the most liberal standard available so long as due process requirements are met. Section 1102 is broad in scope and subsection (e) of the section states:

> (e)  The Legislature intends that jurisdiction under this Section shall be coextensive with the minimum standards of due process as determined in the United States Federal Courts.

Thus, the guidelines declared in International Shoe, supra, is the law in the Commonwealth and therefore the court is bound to determine if the minimum contact and reasonableness standards are met in this particular case. Each case must be decided on its own facts.

> "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. (citations omitted)  Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure...." International Shoe Co. v Washington, supra at 66 S.Ct. pp 159-160.

Thus this court must deem whether the quality and nature of Rotec's acts as gleaned from the record subjects it to the jurisdiction of the Commonwealth Courts.[5]

At the outset, the court is convinced that if the only acts of the defendant were the mailing of the aircraft and parts to plaintiff in the Commonwealth, no in personam jurisdiction would attach to defendant. Neither is there sufficient minimum contact nor is it reasonable for a Texas corporation to be subjected to jurisdiction on a one customer mail sale.

The plaintiff cites Product Promotion's, Inc. v Cousteau, 495 F.2d 483, (5th Cir. 1974) and McGee v International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199 (1957) for the proposition that contact by mail can be sufficient to gain jurisdiction over the foreign corporation. Product Promotions is clearly distinguishable since the foreign corporation tested its product in Texas and had advertising films and reports made in that state. Succinctly put, a good part of the contract of the foreign corporation was performed in Texas. McGee involved an insurance contract issued by a Texas company, insuring a California resident. The Supreme Court found

_____

[5]
Plaintiff points out that he has procedurally complied with the Commonwealth's "long arm" statute, 7 CMC 1101 et seq and the defendant does not contest this.

186

jurisdiction because of the manifest interest of California in protecting its citizens when it came to collecting for the death of an insured. It was held that it simply was unreasonable for the beneficiary to go to Texas to collect on the policy.

The plaintiff has not cited any cases, nor has the court found any, which imposes in personam jurisdiction on a foreign corporation for the solicitation of business by advertising and delivering products by mail. If such were the case, every foreign corporation that advertises in a magazine which is sold in the Commonwealth and then sends by mail the product to the reader/consumer would be considered transacting business here. This, of course, would violate both prongs of the test to be applied. Neither are there any "contacts" nor is it reasonable to subject the advertiser/seller to personal jurisdiction in the jurisdiction where the consumer lives.

The key to the resolution of this motion, as the court sees it, is whether the fact that the defendant made the plaintiff its dealer is sufficient to find the defendant was transacting business in the Commonwealth. It is concluded that it does not.

The plaintiff never sold a plane, never received an

187

order for a plane, or purchased a plane for sale to a customer. The most that the plaintiff has asserted in his affidavit is that he "... attempted to sell Rotec's products to citizens and residents of the CNMI."

The "dealership" relationship between the plaintiff and defendant was clearly one of having plaintiff serve as an independent contractor. The plaintiff was assured of an exclusive dealership area so long as he purchased five planes from defendant and performed other tasks. Remuneration to dealers is through a discount system. For example, Rotec sells a plane to a dealer at 25% off the retail price. When the dealer sells at the retail price, his profit is the 25% difference. (See Exhibits 4a and 24). No salary is paid the dealer and the only discipline exerted by Rotec over its dealers is that if the dealers don't purchase a sufficient number of planes, they will be terminated as a dealer.

The defendant did not maintain an office or even a telephone in the Commonwealth. It did not keep any of its goods here nor did it maintain a bank account here. It did not have any employees in the Commonwealth. Succinctly put, there just were no "contacts" by the defendant in the Commonwealth.

It also is clear that it would be unreasonable to require the defendant to defend the three counts in

188

plaintiff's complaint.[6]

Accordingly;

IT IS ORDERED that this matter be and the same is hereby dismissed.

Dated at Saipan, CM, this 28th day of May, 1985.

_____
Robert A. Hefner, Chief Judge

---

6
    In view of the court's conclusion, it has been unnecessary to discuss the comparisons of the defendant's activities in the Commonwealth with the causes of action alleged.  It is noted, that Count 1, a tort claim, is not based upon injury from use of the airplane plaintiff purchased but is based upon emotional distress for the failure of the defendant to remit to plaintiff $685 for the excess freight charges and $448 for the parts paid for by the plaintiff.  Count II claims damages arising out of the dealership program which plaintiff asserts he wasn't able to fully participate in (which, of course, further supports the finding of insufficient contacts of the defendant with the Commonwealth) and Count III is a contract action for the $448 paid by the plaintiff for the parts.  The latter count is not based on any dealership activity in the Commonwealth.

    At argument, it was brought out that the District Court had transferred the product liability cause of action to the Texas District Court.  Defendant's argument that since the other claims of plaintiff will be tried there it is much more feasible and reasonable to have all causes of action heard there, has definite merit.